ORIGINAL

Approved: _____
JERRY J. FANG
Assistant United States Attorney

Before:   THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York

# 23 MAG 0 0 7 9 4

```
------------------------------------X
                                    :
UNITED STATES OF AMERICA            :    SEALED COMPLAINT
                                    :
                                    :    Violations of
              -v.-                  :    18 U.S.C. §§ 1349, 1343,
                                    :    1341, 912, 1028A, and 2.
                                    :
MATTHEW BLAKE MORROW-WU,            :
    a/k/a "Matthew Blake Morrow,"   :    COUNTY OF OFFENSE:
    a/k/a "Matthew Wu,"             :    NEW YORK
    a/k/a "Matthew Morrow-Wu,"      :
    a/k/a "Blake Wu," and           :
                                    :
SHANGZHEN WU                        :
    a/k/a "Daniel Wu,"              :
                                    :
              Defendants.           :
                                    :
------------------------------------X
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

STEPHANIE VERDINO, being duly sworn, deposes and says that she is a Special Agent with the United States Attorney's Office for the Southern District of New York ("USAO SDNY") and charges as follows:

### COUNT ONE
(Conspiracy to Commit Wire Fraud and Mail Fraud)

1.    From at least in or about December 2021 up to and including at least in or about October 2022, in the Southern District of New York and elsewhere, MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree, together and with each other, to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

2.    It was a part and object of the conspiracy that
MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants, and
others known and unknown, knowingly having devised and intending
to devise a scheme and artifice to defraud and for obtaining money
and property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause to
be transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings, signs,
signals, pictures, and sounds for the purpose of executing such
scheme and artifice, in violation of Title 18, United States Code,
Section 1343.

3.    It was a further part and object of the conspiracy
that MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants, and
others known and unknown, willfully and knowingly, having devised
and intending to devise a scheme and artifice to defraud, and for
obtaining money and property by means of false and fraudulent
pretenses, representations and promises, for the purpose of
executing such scheme and artifice and attempting so to do, would
and did place in a post office and authorized depository for mail
matter, matters, and things to be sent and delivered by the Postal
Service, and did deposit and cause to be deposited matters and
things to be sent and delivered by private and commercial
interstate carriers, and would and did take and receive therefrom,
such matters and things, and would and did cause to be delivered
by mail and such carriers according to the directions thereon, and
at the places at which they were directed to be delivered by the
person to whom they were addressed, such matters and things, in
violation of Title 18, United States Code, Section 1341.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Wire Fraud)

4.    From at least in or about December 2021 up to and
including at least in or about March 2022, in the Southern District
of New York and elsewhere, MATTHEW BLAKE MORROW-WU and SHANGZHEN
WU, the defendants, knowingly having devised and intending to
devise a scheme and artifice to defraud, and for obtaining money
and property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television communication
in interstate and foreign commerce, writings, signs, signals,
pictures, and sounds, for the purpose of executing such scheme and
artifice, to wit, MORROW-WU and WU engaged in a scheme to defraud
an architectural firm located in Manhattan, New York ("Company-

1") at which WU was employed as a business manager by attempting to embezzle at least $91,980 from Company-1's bank account, including through the use of wire transmissions to further the embezzlement scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
(Mail Fraud)

5.     From at least in or about December 2021 up to and including at least in or about October 2022, in the Southern District of New York and elsewhere, MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, MORROW-WU and WU caused a fictitious letter falsely purporting to be from the United States Attorney for the Southern District of New York to be sent and delivered by the Postal Service to Company-1's offices in Manhattan, New York on or about October 24, 2022 in furtherance of a scheme to defraud Company-1.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT FOUR
(Impersonating a Federal Officer)

6.     In or about October 2022, in the Southern District of New York and elsewhere, MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants, falsely assumed and pretended to be an officer and employee acting under the authority of the United States and a department, agency and officer thereof, and acted as such, to wit, MORROW-WU and WU caused a fictitious letter falsely purporting to be from the United States Attorney for the Southern District of New York in his capacity as such to be sent and delivered to Company-1's offices in Manhattan, New York on or about October 24,

2022.

(Title 18, United States Code, Section 912.)

### COUNT FIVE
(Aggravated Identity Theft)

7.    From at least in or about January 2022 up to and
including at least in or about March 2022, in the Southern District
of New York and elsewhere, MATTHEW BLAKE MORROW-WU and SHANGZHEN
WU, the defendants, knowingly did transfer, possess, and use,
without lawful authority, a means of identification of another
person, during and in relation to a felony violation enumerated in
Title 18, United States Code, Section 1028A(c), to wit, MORROW-WU
and WU used the names, signatures, and business titles of other
persons during and in relation to the conspiracy to commit mail
fraud and wire fraud charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b),
and 2.)

The bases for my knowledge and for the foregoing charges
are, in part, as follows:

8.    I am a Special Agent with the USAO SDNY.  I have
been employed by the USAO SDNY for approximately four months and
have previously served as a Special Agent at the United States
Postal Service's Office of the Inspector General for eleven years.
I have been personally involved in the investigation of this
matter.    I base this affidavit on that participation, my
conversations with other law enforcement agents and other
individuals, my examination of reports and records, and my training
and experience.  Because this affidavit is being submitted for the
limited purpose of demonstrating probable cause, it does not
include all the facts that I have learned during the course of my
investigation.  Where the contents of documents and the actions,
statements, and conversations of others are reported herein, they
are reported in substance and in part.

### Overview of the Scheme

9.    As set forth below, there is probable cause to
believe that from at least December 2021 to at least October 2022,
MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants,
participated in a mail and wire fraud scheme in which the
defendants attempted to embezzle more than $91,980 from a bank
account held by an architecture firm which I know, based on my
participation in the investigation, is located in Manhattan, New

York ("Company-1"), where WU worked.  One or more of the defendants took various steps in furtherance of and to conceal the fraudulent scheme, including the following:

          a.    Using a payment processing service to suggest that the embezzled funds went to legitimate vendors of Company-1 and mask the true recipient of the embezzled funds;

          b.    Incorporating a fictitious law firm and entering into a sham retainer agreement with Company-1, without Company-1's knowledge, to further legitimize the embezzled funds;

          c.    Generating written and electronic correspondence falsely purporting to be from Company-1 to the fictitious law firm and authorizing the credit card charges for the embezzled funds; and

          d.    Sending Company-1 a "target letter" after Company-1 disputed the credit card charges for the embezzled funds falsely purporting to be from the United States Attorney's Office for the Southern District of New York and threatening Company-1 with criminal prosecution for conspiracy to commit wire fraud, wire fraud, and the fraudulent use of credit cards.

### The Fraudulent Transactions

          10.    Based on my discussions with other law enforcement agents and other individuals, and my review of bank records and other records, I have learned, in substance and in part, the following:

          a.    From on or about January 2022 through on or about March 2022, eleven transactions totaling $91,980 (the "Fraudulent Transactions") were charged to a credit card (the "Credit Card") associated with an account at a certain financial institution ("Bank-1") held by Company-1.[1]  The Fraudulent Transactions include the following:

          i.    A $7,500 transaction, dated January 27, 2022, to a particular vendor purportedly associated with a telephone number ending in -2400 (the "2400 Number") and an address in Middletown, Delaware;

---

[1] Based on conversations with an employee of Bank-1, I have learned that charges on Bank-1's credit cards originate where the credit cards are swiped or where the credit card number is entered, and are routed through Bank-1's facilities in Arizona or Florida.

    ii. A $5,030 transaction, dated February 1, 2022, to a second vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    iii. A $9,000 transaction, dated February 3, 2022, to a third vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    iv. A $25,000 transaction, dated February 7, 2022, to a fourth vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    v. A $3,000 transaction, dated February 14, 2022, to a fifth vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    vi. A $4,000 transaction, dated February 16, 2022, to a sixth vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    vii. A $7,500 transaction, dated February 21, 2022, to a seventh vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    viii. A $12,450 transaction, dated February 25, 2022, to an eighth vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    ix. A $7,500 transaction, dated March 1, 2022, to a ninth vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware;

    x. A $9,500 transaction, dated March 2, 2022, to a tenth vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware; and

    xi. A $1,500 transaction, dated March 3, 2022, to an eleventh vendor, also purportedly associated with the 2400 Number and an address in Middletown, Delaware.

    b. Based on an interview with a principal of Company-1 ("Principal-1") who typically reviewed all of Company-1's credit card statements, I have learned that although the names of the vendors that purportedly received the Fraudulent Transactions corresponded to legitimate vendors of Company-1, Principal-1 flagged the Fraudulent Transactions upon reviewing Company-1's statements with Bank-1 because (i) Company-1 did not pay its vendors by credit card; (ii) all of the transactions went

to Middletown, Delaware, raising Principal-1's suspicion; and (iii) the vendors to whom the Fraudulent Transactions were sent confirmed to Principal-1 that they did not actually receive any payments from Company-1's account with Bank-1.

              c.    According to Principal-1 and records provided by Principal-1, Company-1 subsequently disputed the Fraudulent Transactions with Bank-1.  However, Bank-1 advised Company-1 that it would not reverse the Fraudulent Transactions, as explained below:

              i.    Based on my conversations with Principal-1 and a representative of Bank-1, as well as my review of records provided by Bank-1, I have learned that the Fraudulent Transactions were processed through a payment processing provider ("Payment Processor-1").[2]  After Bank-1 contacted Payment Processor-1, Payment Processor-1 identified the merchant -- i.e., the true recipient -- of the Fraudulent Transactions as an entity named "Morrow Law Group, Inc." ("Morrow Law"), and not the vendors that were listed in the statements from Bank-1 that Principal-1 reviewed.

              ii.    Based on my conversations with Principal-1 and a representative of Bank-1, as well as my review of records provided by Principal-1 and Bank-1, I have also learned that Payment Processor-1 contacted Morrow Law, which provided Payment Processor-1 with a retainer agreement that Morrow Law purportedly entered into with Company-1 on or about January 10, 2022 (the "January 10 Retainer Agreement").  The January 10 Retainer Agreement, ostensibly signed by a senior business manager of Company-1 ("Senior Business Manager-1") on behalf of the firm and listing Senior Business Manager-1's email address, authorized a $25,000 payment from Company-1 to Morrow Law as a retainer and advance payment for services, including the negotiation and settlement of debts and potential litigation defense.

              iii.    Based on my conversations with Principal-1 and a representative of Bank-1, as well as my review of records provided by Principal-1 and Bank-1, I have further learned that in addition to the January 10 Retainer Agreement, Morrow Law provided Payment Processor-1 with additional documents, allegedly from

---

[2] Based on my training and experience, I know that merchants who use payment processing services such as Payment Processor-1 are able to specify the name of the recipient for a credit card transaction.

Company-1 to Morrow Law, that on their face authorized payments from Company-1 to Morrow Law.

iv.      This documentation included a written authorization, dated January 25, 2022, from Company-1 to Morrow Law to represent Company-1 in connection with a construction project (the "January 25 Written Authorization"). The January 25 Written Authorization quoted certain fees to be paid by Company-1 to Morrow Law, including a "retainer fee" of $7,500, a "document fee" of $5,030, a "lien release" of up to $9,000, and another "lien release" of up to $40,000. The January 25 Written Authorization purported to be preliminarily approved by Senior Business Manager-1, with his signature and official title, and finally approved by Principal-1, with her signature and official title.

v.      This documentation also included an email, dated March 14, 2022, from Senior Business Manager-1 to Morrow Law (the "March 14 Email"), which purported to confirm receipt of certain invoices for work to be performed by Morrow Law for Company-1's clients, and to approve the payment of certain invoices in the amounts of $4,000, $7,500, $5,030, $3,000, $9,000, $7,500, $7,500, and $12,450. The March 14 Email directed Morrow Law to use the Credit Card for these payments and to list the client's name on each transaction. As referenced in the March 14 Email, Morrow Law also provided Payment Processor-1 with a photocopy of the front and back of the Credit Card.

vi.      Based on my conversations with a representative of Bank-1, I know that Payment Processor-1 forwarded to Bank-1 the Retainer Agreement and the additional documentation that it received from Morrow Law.

11. Based on my conversations with employees of Company-1 and my review of records, I have learned, in substance and in part, the following:

a.      Company-1 never approved of any of the Fraudulent Transactions, nor did it have any retainer agreement with Morrow Law, much less provide Morrow Law with authority to use the Credit Card.

b.      For example, based on conversations I have had with Principal-1, I know that Principal-1 never authorized the Fraudulent Transactions and has never had any business dealings with an entity by the name of "Morrow Law Group." The signature in the January 25 Written Authorization was not Principal-1's signature.

c.    As a further example, based on conversations I have had with Principal-1, who relayed conversations she had with Senior Business Manager-1, and my review of records provided by Principal-1, Senior Business Manager-1 had never heard of, corresponded with, signed a retainer agreement with, or had any business dealings with any entity by the name of "Morrow Law Group," and to his knowledge, Company-1 did not transact with any such entity.  The signatures in the January 10 Retainer Agreement and the January 25 Written Authorization were not Senior Business Manager-1's signature.

### The Fraudulent Target Letter

12.    Based on my participation in the investigation, my conversations with other law enforcement agents and other individuals, and my review of business records, I have learned, in substance and in part, the following:

a.    Based on my conversations with Principal-1 and other law enforcement agents, as well as my review of records provided by Principal-1, I have learned that on or about October 24, 2022, after Principal-1 had begun disputing the Fraudulent Transactions, Company-1 received a letter via U.S. Postal Service Certified Mail, purporting to have been sent by the United States Attorney for the Southern District of New York (the "Fraudulent Target Letter").

b.    Based on my review of the Fraudulent Target Letter, dated October 12, 2022, I have further learned that it advised Company-1 that the U.S. Attorney's Office considered it to be "a target of criminal investigation of your conduct relating to conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 1343 and §§ 1349, and 15 U.S.C. §§ 1644 fraudulent use of credit cards."  In addition, the Fraudulent Target Letter warned Company-1 that the "matter has been referred for prosecution by United States Secret Service."  Despite several typographical errors, the Fraudulent Target Letter bore hallmarks indicating that it was sent with the purported authority of the United States Attorney for the Southern District of New York, such as the electronic signature of a "Special Assistant United States Attorney," the seal of the Department of Justice, and a threat that any destruction, alteration, or withholding of grand jury materials could constitute obstruction of justice.

c.    The Fraudulent Target Letter was sent from Phoenix, Arizona, using an online printing and mailing service provider (the "Online Mailing Service"), which I know, based on information regarding the Online Mailing Service's products and

services posted publicly on its website, allows its customers to upload files to be printed and mailed by the Online Mailing Service without the need for the customer to physically visit a post office.

## Identification of MORROW-WU and WU

13.   Based on my review of business records provided by the Online Mailing Service, I have learned that (i) the customer who paid for the Fraudulent Target Letter was listed as "Morrow Law Group"; (ii) the contact email address was listed as "blakewu2@gmail.com"; (iii) the cardholder names were listed as "Morrow Law Group" and "Matthew Wu"; and (iv) one of the customer IP addresses used to make payments relating to the Fraudulent Target Letter was 69.142.150.113.

14.   Based on my review of business records provided by an email service provider, I have learned that the IP address 69.142.150.113 -- i.e., one of the IP addresses linked to payments for the Fraudulent Target Letter -- was also used to access a certain email account linked to the email address "shangzhenwu15@gmail.com."

15.   Morrow Law's Certificate of Incorporation, filed with the Secretary of State of the State of Delaware on January 8, 2021, listed "Shangzhen Wu" and "Matthew Morrow-Wu" as directors of Morrow Law and "Shangzhen Wu" as the incorporator of Morrow Law.   Morrow Law's Certificate of Incorporation also listed its registered office at an address located in Middletown, Delaware, the same city and state associated with the Fraudulent Transactions.

16.   Based on my review of public records databases and open-source information, neither WU nor MORROW-WU appear to be licensed attorneys in any jurisdiction, nor does Morrow Law appear to employ any attorneys or staff.

17.   Based on my review of business records provided by the New York State Department of Labor, my review of law enforcement databases, and my conversations with employees of Company-1, I have learned that SHANGZHEN WU, the defendant, has been employed by Company-1 since at least April 2018, including as a business manager during the time that the Fraudulent Transactions were received by Morrow Law and during the time that the Fraudulent Target Letter was sent by Morrow Law to Company-1.   Based on my conversations with employees of Company-1, I have also learned that SHANGZHEN WU, the defendant, could not write checks from Company-1's bank accounts without Principal-1's authorization,

which is how Company-1 typically paid its vendors.  On the other hand, WU, as a business manager, had access to the Credit Card as well as knowledge of Company-1's vendors.

18.  Based on my review of law enforcement databases, I have learned that MATTHEW BLAKE MORROW-WU, the defendant, has used the following names, among others: (i) "Matthew Blake Wu," which is consistent with the cardholder name associated with the Fraudulent Target Letter; (ii) "Blake Wu," which is consistent with the contact email address associated with the Fraudulent Target Letter," and (iii) "Matthew Blake Morrow-Wu," which is consistent with the name of one of the listed directors of Morrow Law.  Based on my review of law enforcement databases and immigration paperwork, I have also learned that (i) SHANGZHEN WU, the defendant, has a listed email address of "shangzhenwu15@gmail.com," which is associated with the same IP address that was used to pay for the Fraudulent Target Letter; and (ii) SHANGZHEN WU, the defendant, has a prior listed residence address that is the same as the address listed in Morrow Law's Certificate of Incorporation for "Shangzhen Wu."

WHEREFORE, I respectfully request that MATTHEW BLAKE MORROW-WU and SHANGZHEN WU, the defendants, be arrested and imprisoned or bailed, as the case may be.

_____
STEPHANIE VERDINO
Special Agent
United States Attorney's Office
Southern District of New York

Sworn to me in person
on this 31 day of January 2023

_____
THE HONORABLE JENNIFER E. WILLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK